# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LATESHA HENDERSON and** | * | **CIVIL ACTION** |
| **CALVIN HENDERSON** | * | |
| | * | **NO. 11-39** |
| **VERSUS** | * | |
| | * | **SECTION "C" (4)** |
| **MAJOR JOE TURNER and** | * | |
| **SERGEANT BRIAN COVINGTON** | * | |

## ORDER AND REASONS[1]

Plaintiffs Latesha Henderson and Calvin Henderson bring this violation of civil rights claim under 28 U.S.C. § 1988 and 42 U.S.C. § 1983 and state law wrongful death and survival action claims on behalf of their decedent alleged father, Calvin Earl Dawkins, against Major Joe Turner and Master Sergeant Brian Covington. (Rec. Doc. 7 at 1, 8-9; Rec. Doc. 74 at 1). Defendants are sued in both their individual and official capacities.

Before the Court is Plaintiffs' Motion in Limine Regarding Capacity and the Requirement that a Challenge Must Be Specifically Pled. (Rec. Doc. 87). Defendants oppose this Motion. (Rec. Doc. 95). Having reviewed the record, memoranda of counsel, and the law,

---

[1]Rachael McMillan, a second-year student at Tulane University Law School, assisted in the preparation of this order.

1

the motion is DENIED for the following reasons.

I.  FACTUAL BACKGROUND

According to Plaintiffs, On September 29, 2010, Dixon Correctional Institute staff instructed Calvin Earl Dawkins to report to the medical infirmary for dialysis. (Rec. Doc. 7 at 6). Mr. Dawkins was in the midst of a twenty year term for a possession with intent to distribute cocaine conviction. (Rec. Doc. 74 at 2). Mr. Dawkins' failing health required dialysis every other day; however, September 29 marked the second day in a row that Mr. Dawkins was to report for treatment. *Id*. The dialysis process first removes blood from the body to separate fluids and then returns the filtered blood to the body. *Id*. Mr. Dawkins refused to submit to dialysis due to chest pain and allegedly cursed at an Aide to "mind your own f-----g business" when she questioned his refusal to report for dialysis. *Id*.

Sergeant Wright allowed Mr. Dawkins to go to the infirmary to seek medical attention for his chest pain; however, when the Aide told Sergeant Wright about Mr. Dawkins' profane statement, Sergeant Wright reported the incident to Major Joe Turner. *Id*. Major Turner angrily confronted Mr. Dawkins as he sat in the lobby waiting to see a doctor for his chest pain. *Id*. Major Turner ordered Mr. Dawkins to be restrained and placed in administrative segregation to await disciplinary proceedings for his profane remarks instead of waiting for medical treatment. *Id*. Mr. Dawkins protested this diversion and demanded to speak to the doctor and Warden of the prison. *Id*. A scuffle ensued, whereupon Major Turner and Master Sergeant Brian Covington restrained Mr. Dawkins with feet shackles and forcefully tackled him to the ground to apply handcuffs. *Id*. at 2-3. Two other guards and a nurse were summoned to assist by a beeper

alert. *Id*. at 3. When Major Turner and Sergeant Covington successfully handcuffed Mr. Dawkins and pulled him into a seated position, Mr. Dawkins showed no signs of life. *Id*. Attempts to resuscitate Mr. Dawkins continued for thirty minutes, but by the time he arrived at Lane Memorial hospital, he experienced seizure activity and was placed on life support. *Id*. Life support was discontinued on October 6, 2010 and Mr. Dawkins passed away. *Id*.

Mr. Dawkins is allegedly survived by an adult son and daughter, who are the Plaintiffs. *Id*. Both are residents of Michigan, where they moved with their mother during childhood. According to Plaintiffs, they maintained a relationship with their father with phone calls and summer visits to Monroe, Louisiana after moving to Detroit. *Id*. However, their relationship was severed upon Mr. Dawkins' incarceration because their mother refused to apprise Plaintiffs of his whereabouts. *Id*. Plaintiffs learned of Mr. Dawkins' death after he was buried. *Id*.

In response to the above events, Plaintiff Latesha Henderson filed claims for wrongful death under Louisiana Civil Code article 2315.1, survival action under Louisiana Civil Code article 2315.2, and violation of civil rights under 42 U.S.C. § 1983 on December 21, 2010 in the 20th Judicial District Court for the Parish of East Feliciana, State of Louisiana. (Rec. Doc. 1). The case was removed to the United States District Court for the Middle District of Louisiana on January 24, 2011. *Id*. at 3. Thereafter, an amended complaint adding Calvin Earl Henderson as a party was filed in July 2011. (Rec. Doc. 7). The trial was previously set for June 11, 2012, but was cancelled to be reset, if necessary, after the Court ruled on pending motions. (Rec. Doc. 98).

Now before the Court is Plaintiff's Motion in Limine Regarding Capacity and the Requirement that a Challenge Must be Specifically Pled. (Rec. Doc. 87). Plaintiffs seek to limit

3

any challenges to their capacity as descendants of Mr. Dawkins to bring suit for the wrongful death and survival action because Defendants did not plead and thus waived the affirmative defense that Plaintiffs lacked capacity under Rule 9 of the Federal Rules of Civil Procedure. (Rec. Doc. 87-2 at 1-2). Defendants respond that a challenge to capacity would not be untimely, that Defendants had no facts to raise a proper Rule 9 challenge to capacity, and that Plaintiffs must prove filiation to bring a successful wrongful death and survival action claim. (Rec. Doc. 95 at 2-4).

II.     LAW AND ANALYSIS

A.      APPLICABLE LAW

1.      Rule 9 of the Federal Rules of Civil Procedure

Rule 9 of the Federal Rules of Civil Procedure states that a party seeking to challenge capacity "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." FED. R. CIV. P. 9(a)(2). If the defendant fails to plead that the plaintiff lacks capacity in a timely manner, the objection is waived and the defense is lost. *Lang v. Tex. & Pac. R.R. Co.*, 624 F.2d 1275, 1277 (5th Cir. 1980). In the Fifth Circuit, a challenge to capacity is untimely when it is raised during or after trial. *Id.*; *Ralston Oil and Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 691 (5th Cir. 1983). For example, a party's challenge to capacity is waived when it is raised in a motion for new trial after a jury verdict and judgment are entered. *Lang*, 624 F.2d at 1277. The objection is also waived when it is first raised during trial when capacity was never challenged in complaint, challenged in the defendant's answer, or addressed in the pre-trial order. *Ralston*, 706 F.2d at 691.

A specific denial is not the same as a general denial, for otherwise "Rule 9(a) would be rendered superfluous." *Id*. at 692. The Court was unable to find a precise definition of what constitutes a specific denial in Fifth Circuit jurisprudence, but other circuits furnish some guidance. The Eleventh Circuit found that a defendant's answer stating that "'plaintiff does not have standing or capacity to bring this action, as he is not the appropriate legal representative of the decedent's estate'" was a specific denial because it directly challenged plaintiff's capacity. *Pugh v. Kobelco Const. Mach. Am., LLC*, 413 Fed. Appx. 134, 136 (11th Cir. 2011). The Ninth Circuit requires that a party issue a "specific negative averment...in the responsive pleading or by motion before pleading" or in an amended pleading. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) (citing *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49-50 (9th Cir. 1972). Jurisprudence in the Eastern District of Louisiana shows that a specific denial is made in the answer or in a pre-answer motion. *In re Taxable Mun. Bond Secs. Litig.*, Civ. A. No. MDL 863, 1992 WL 124786 at *1 (E.D.La.. June 2, 1992).

2.  Filiation under Louisiana Tort Law

Under 42 U.S.C. § 1988, capacity to file suit under 42 U.S.C. § 1983 is determined by the common law of the state that has jurisdiction of the case. *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004). This Court may hear the plaintiff's state law claims through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. It appears to the Court that the parties agree that Louisiana law applies to the instant action. Louisiana law governs that wrongful death and survival actions may be brought by the "child or children of the deceased." LA. CIV. CODE ANN.. art. 2315.1(A)(1) (2012); LA. CIV. CODE ANN. art. 2315.2(A)(1) (2012). Children are "those

persons born of the marriage, those adopted, and those *whose filiation to the parent has been established in the manner provided by law*, as well as descendants of them in the direct line." LA. CIV. CODE ANN. art. 3506(8) (2012) (emphasis added).

A biological relationship between the tort victim and the plaintiff child is a "critical element" of a claim arising under Louisiana Civil Code article 2315. *Turner v. Busby,* 883 So.2d 412, 418 (La. 2004). A man is presumed to be a child's father when the child is born during his marriage to the mother or "within three hundred days from the date of the termination of the marriage." LA. CIV. CODE ANN. art. 185 (2012). If the child's filiation is not presumed, the child can initiate an action to establish paternity under Louisiana Civil Code article 197 to prove paternity in a lawful manner. LA. CIV. CODE ANN. art. 197 (2012). The law states that "if the [paternity action] is instituted after the death of the alleged father, a[n] [illegitimate] child shall prove paternity by clear and convincing evidence." *Id*. Illegitimate children seeking to prove paternity for tort damages under Louisiana Civil Code article 2315, such as wrongful death or survival action claims, face a one-year prescription period of upon the death of the deceased to file their claim. LA. CIV. CODE ANN. art. 2315.1(A) (2012) (wrongful death); LA. CIV. CODE ANN. art. 2315.2(B) (2012) (survival action).

Paternity is an issue of fact. *State v. Shaddinger*, 702 So.2d 965, 970 (La. Ct. App. 1997). The trial court's finding of this fact cannot be overturned by an appellate court except in the case of manifest error. *Jordan v. Taylor*, 568 So.2d 1097, 1098 (La. Ct. App. 1990). If the illegitimate child was not formally acknowledged by the father, such as by being named on the child's birth certificate or performing a notarial act acknowledging paternity, the child must prove paternity by informal acknowledgment. *Id*.; *See* LA. CIV. CODE ANN. art. 197(c) (2012).

The child must provide clear and convincing evidence that the deceased parent informally acknowledged the child when the parent was alive in order to bring a successful filiation claim. *Jenkins v. Mangano Corp.*, 774 So.2d 101, 103 (La. 2000); *See* LA. CIV. CODE ANN. art. 197(d) (2012).

Evidence of filiation through informal acknowledgment "must be continuous, habitual, unequivocal, and leave little doubt that the alleged father considered himself to be the father of the child." *Jordan*, 568 So.2d at 1098. Informal acknowledgments of paternity take many forms, such as writings, "living in concubinage with the mother in his home at the time of the child's conception," having the same surname, consistently making representations to others that the child is his own, and naming the child in his succession. *Jenkins*, 774 So.2d at 103. For example, in *Jenkins v. Mangano Corporation*, an illegitimate child successfully established filiation with her deceased father when she and her mother provided testimony amounting to clear and convincing evidence of filiation. *Id*. at 104-05. Her mother testified that she had exclusive sexual relations with the father when the child was conceived and that the father later acknowledged his paternity by addressing the child as his daughter within his community. *Id*. at 104. The daughter testified that she visited her father each summer, was publicly acknowledged as his daughter, and received her father's Social Security benefits. *Id*. Such evidence meets the clear and convincing evidence threshold to prove that the father "continuously and unequivocally recognized" his illegitimate child to establish filiation. *Id*.

A filiation action inherently accompanies an illegitimate child's wrongful death and survival action. Even if an illegitimate child plaintiff does not specifically plead a filiation action in a wrongful death and survival action claim, filiation is still an issue despite the lack of a

formal caption in the complaint. *Lollis v. Concordia Parish*, No. 1:05-cv-01474, 2010 WL 454721 (W.D.La. Feb. 9, 2010). Hence, a filiation action may be established in an amended petition so long as the plaintiff timely files the petition for damages pursuant to Louisiana Civil Code article 2315. *Reese v. State of La.*, 866 So.2d 244, 250 (La. 2004). A wrongful death and survival action claim brought by children born out of wedlock gives "fair notice of the factual situation out of which...filiation[ ] arises." *Id*. Therefore, illegitimate children acting as plaintiffs in wrongful death and survival action claims may amend and supplement complaints to establish paternity because filiation must be proved for successful litigation. *Id*.

B.     ANALYSIS

1.     Defendants' Challenge to Plaintiff's Capacity

Plaintiffs assert that Defendants waived their right to challenge capacity because Defendants did not timely file a specific denial of Plaintiffs' capacity to bring suit as the children of Mr. Dawkins. (Rec. Doc. 87-2 at 2-3). Plaintiffs claim that Defendants untimely established their intention to challenge Plaintiffs' capacity at trial during pre-trial mediation and in pre-trial inserts. (Rec. Doc. 87-2 at 10). Plaintiffs' motion in limine therefore seeks to disallow any evidence "that may in any manner suggest that the Plaintiffs are not filiated with Mr. Dawkins or that they have a burden of proving filiation at trial or [sic] that they are not blood relatives" of Mr. Dawkins. (Rec. Doc. 87 at 1).

Defendants have not specifically challenged Plaintiffs' capacity as descendants, but this does not mean that the defense is waived. Just as in *Ralston* where the Fifth Circuit found that a general denial of a plaintiff's claims does not constitute the specific denial that Rule 9 requires,

Defendants here only provide a general denial of capacity in their Answer to the Amended Complaint by stating that "Defendants deny these allegations out of an abundance of caution." *Ralston*, 706 F.2d at 692; (Rec. Doc. 10 at 2). Defendants only raise Plaintiffs' relationship with Mr. Dawkins as a contested issue of fact, not a specific denial of Plaintiffs' relationship to Mr. Dawkins. (Rec. Doc. 74 at 7). Therefore, Defendants have not made a specific denial of capacity.

However, the Court disagrees with Plaintiffs' allegation that Defendants have waived any objection or challenge to capacity because Defendants did not timely assert the defense. (Rec. Doc. 87-2 at 2). First, unlike in *Lang* and *Ralston* where capacity challenges were untimely when raised during or after trial, this case is not at such an advanced state to render the capacity defense waived as untimely. *Lang*, 624 F.2d at 1272; *Ralston*, 706 F.2d at 691. Second, unlike in *Ralston* where the Fifth Circuit held that the defendants waived the capacity challenge because the pre-trial order did not include capacity as an issue, in this case the Pre-Trial Order reflects Defendants' intention to challenge Plaintiffs' capacity by questioning whether Plaintiffs are the legal heirs of Mr. Dawkins. *Ralston*, 706 F.2d at 691; (Rec. Doc. 74 at 7). In addition, Defendants also noted their intent to challenge Plaintiffs' capacity in its April 5, 2011 Joint Status Report by listing Plaintiffs' capacity to bring suit and relationship with Mr. Dawkins as disputed issues. (Rec. Doc. 5 at 3). Third, the June 11, 2012 trial date was the first trial setting and was cancelled by this Court to be reset if necessary; thus, Defendants' challenge of Plaintiffs' capacity is hardly an "eleventh hour" defense given the current scheduling circumstances. (Rec. Doc. 98); (Rec. Doc. 102 at 2).

Defendants respond in their Opposition to Motion in Limine that challenging Plaintiffs' capacity was nearly impossible because Defendants had no supporting facts within their knowledge to issue a specific denial until the close of discovery in late April 2012. (Rec. Doc. 95 at 4). The Court agrees with this sentiment. As Rule 9(a)(2) states, a party must challenge capacity "by a specific denial, which must state any *supporting facts that are peculiarly within the party's knowledge*." FED. R. CIV. P. 9(a)(2) (emphasis added). In this case, even after the close of discovery on April 23, 2012, the deadline for summary judgment motions had passed and Defendants were precluded from filing a dispositive motion regarding Plaintiffs' capacity under the deadlines set forth in the Court's Scheduling Order. (Rec. Doc. 13 at 1). The following section explaining the facts necessary to establish the capacity of Plaintiffs to seek relief as the legal heirs of Mr. Dawkins expands on this issue.

The Court finds that Defendants have not made a specific denial of Plaintiffs' capacity to bring suit; however, the current stage of the case given the cancellation of the June 11, 2012 trial date does not render such a challenge untimely if the challenge appropriately conforms with Rule 9 of the Rules of Federal Procedure. Plaintiffs can claim no real prejudice under these circumstances.


2.  Plaintiffs' Filiation with Mr. Dawkins

Plaintiffs argue that their pleadings established that they are the children of Mr. Dawkins and since Defendants did not timely challenge this assertion, their capacity can no longer be challenged. (Rec. Doc. 87-2 at 7). Furthermore, Plaintiffs contend that allowing Defendants to challenge Plaintiffs' filiation with Mr. Dawkins is an "unfair…surprise defense." (Rec. Doc. 87-

2 at 8). Defendants respond that Plaintiffs must plead and prove filiation to Mr. Dawkins in order to recover for its claims. (Rec. Doc. 95 at 3, 5). The Court finds that filiation is an essential element of Plaintiffs' state law tort claims and must be proved in order to successfully litigate the wrongful death and survival action claims as "suitable remedies" for their 42 U.S.C § 1983 claim. 42 U.S.C. § 1988(a) (2000).

By law, wrongful death and survival actions brought by the "*child or children* of the deceased" require that the Plaintiff meet the definition of a child as provided by Louisiana law. LA. CIV. CODE ANN. art. 2315.1(A)(1) (2012) (emphasis added); LA. CIV. CODE ANN. art. 2315.2(A)(1) (2012) (emphasis added); *See* LA. CIV. CODE ANN. art.3506(8) (2012) (defining "child"). Providing evidence of filiation is a threshold element of the claim because a biological connection is essential to establishing a legal right to tort damages under Louisiana Civil Code article 2315. *Turner*, 883 So.2d at 418. In this case, Plaintiffs provide no evidence that they were born out of marriage or were adopted. The amended complaint makes the simple assertion that Mr. Dawkins is Plaintiffs' father, but offers no additional explanation about their legal status as legitimate or illegitimate children. (Rec. Doc. 7 at 1). If Plaintiffs are entitled to damages for wrongful death and survival action under Louisiana law as they claim, Plaintiffs are bound to provide clear and convincing evidence of filiation to the deceased Mr. Dawkins. LA. CIV. CODE ANN. art. 197(d) (2012); (Rec. Doc. 7 at 8).

The Court questions, as a matter of law, whether the record provides clear and convincing evidence of Plaintiffs' filiation with Mr. Dawkins required by Louisiana law. First, there is no explanation of Ms. Henderson's filiation to Mr. Dawkins. Second, there is no testimony from the Plaintiffs' mother or any other witness regarding her relationship with Mr.

Dawkins during the time of Plaintiffs' conception.  Unless Plaintiffs provide birth certificates with Mr. Dawkins named as the father or a notarial act in which Mr. Dawkins acknowledged his paternity, Plaintiffs must prove Mr. Dawkins' informal acknowledgment of paternity. *Jordan*, 568 So.2d at 1098.

Evidence to prove an illegitimate child's filiation to a deceased father must show that the father informally acknowledged the child as his own during his lifetime. *Jenkins*, 774 So.2d at 103.  Just as in *Jenkins* where the mother testified that she had exclusive sexual relations with the deceased father during the time of conception and child testified that her deceased father acknowledged and financially supported her during his lifetime, here *each* Plaintiff must provide similar evidence to establish their filiation with Mr. Dawkins. *Jenkins*, 774 So. 2d at 104-05.  Presently, the only evidence provided to establish filiation through informal acknowledgment is Mr. Henderson's deposition. (Rec. Doc. 69-6 at 3).

Plaintiffs are not unduly burdened by Defendants' alleged "surprise defense" of challenging Plaintiffs' capacity because proving filiation is hardly a surprise given the nature of the wrongful death and survival action claims. *Reese*, 866 So.2d at 250; (Rec. Doc. 87-2 at 8).  A biological connection between the Plaintiffs and their deceased father is an essential element of their wrongful death and survival action claims. *Turner*, 883 So.2d at 418.  Plaintiffs timely filed their wrongful death and survival claims within the one-year prescription period set out in Louisiana Civil Code articles 2315.1 and 2315.2 and therefore a filiation claim in an amended petition is permitted. *Reese*, 866 So.2d at 250; LA. CIV. CODE ANN. art. 2315.1(A) (2012) (wrongful death); LA. CIV. CODE ANN. art. 2315.2(B) (2012) (survival action).  The cancellation

of the June 11, 2012 trial date and the lifting of attendant motion deadlines also give the parties enough time before trial to fully explore the filiation issue. (Rec. Doc. 98)

IV. CONCLUSION

Accordingly,

IT IS ORDERED that the Plaintiffs' Motion in Limine Regarding Capacity and the Requirement that a Challenge Must Be Specifically Pled is DENIED. (Rec. Doc. 87).

IT IS FURTHER ORDERED that counsel arrange for another settlement conference with Magistrate Judge Roby within ten days.

New Orleans, Louisiana, this 31st day of July, 2012.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**