UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATESHA HENDERSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-0039** |
| **JOE TURNER, ET AL.** | **SECTION: "C" (4)** |

## ORDER

Before the Court is Plaintiffs, Latesha and Calvin Earl Henderson's, (the "Hendersons") **Plaintiffs' Motion Seeking Reconsideration of Magistrate Judge Ruling "Order" [105] (R. Doc. 109)**, seeking reconsideration of the Court's Order regarding **Plaintiffs' Motion to Compel (R. Doc. 34)**.[1] The motion is unopposed. The motion was noticed for submission on July 11, 2012, and was subsequently set for hearing on the briefs.

The underlying Motion had been filed by the Hendersons, and sought an Order from this Court requiring Defendants State of Louisiana Department of Public Safety and Corrections, Major Joseph Kirby Turner, ("Turner"), and Master Sergeant, Bryan Richard Covington, ("Covington"), (collectively "Defendants"), to produce the personnel files for Defendants Turner and Covington.[2] The Hendersons also sought attorney's fees and costs. Defendants opposed that motion. (R. Docs.

---

[1] Although the docket sheet lists this Motion as "Second Motion to Compel," the Court here uses the title given to the document by the Hendersons in the body of R. Doc. 34.

[2] The Hendersons' motion initially requested the Court require Defendants to produce personnel files for Turner, Covington, Colonel John Smith, and Sergeant Owens. However, since the filing of the motion, Defendants Smith and Owens have been terminated from the case. (R. Doc. 49.) Thus, the only personnel files at issue are those of Turner and Covington.

39, 52.) The motion was deferred, in part, so that the Court could review relevant deposition testimony and conduct an *in camera* review the personnel files at issue.[3]

## I. Background

### A. The Hendersons' Allegations

This wrongful death and survival action is the result of the death of the Hendersons' father, Calvin Earl Dawkins ("Dawkins"), at the Dixon Correctional Institute in Jackson, Louisiana. (R. Doc. 7, p. 1).[4] The Hendersons allege that on or about September 28, 2010, Dawkins was sent to the Prison Infirmary for dialysis or similar medical treatment. *Id.* at 6. The Hendersons further allege that Dawkins was denied proper medical treatment at the Infirmary. *Id.* After Dawkins allegedly used inappropriate language in the presence of a nurse, Dawkins was allegedly first restrained and then severely beaten. *Id.*

The Hendersons further allege that as a result of both the beating and due to the lack of medical care, Dawkins allegedly lost oxygen to his brain for a sufficient period of time to render him in a near vegetative state; after surviving on life support for several days, he died on October 6, 2012. *Id.* The Hendersons further allege that as a result of the death Defendants are liable to them

---

[3]The instant motion was heard with oral argument on March 28, 2012. (R. Doc. 44.) During the hearing on the matter, the Court explained the difficulty in analyzing the motion, and the personnel files submitted to the Court for *in camera* review, without additional facts related to the incident and copies of each parties' deposition testimony. Accordingly, the Court permitted the parties to supplement their written submissions to the Court, and continued and re-set the hearing date to April 11, 2012. Subsequently, the Hendersons sought a two-week extension of the deadlines, which was denied by the Court. (R. Doc. 46.) Instead, the Court granted the parties a one-week extension, and continued and re-set the hearing date to April 18, 2012. (R. Doc. 46.)

[4]The instant case was filed in the State of Louisiana and duly removed to the federal court. Although the Hendersons' Complaint has been duly amended twice (R. Docs. 7, 118), the Second Amended Complaint did not repeat the allegations in the Hendersons' Amended Complaint, but only alleged that both Latesha and Calvin Henderson were biologically related to Dawkins. (R. Doc. 118, pp. 1-2). The Hendersons' Amended Complaint did not attach the petition originally filed in state court, but instead brought all of its allegations in the body of R. Doc. 7.

for wrongful death pursuant to 28 U.S.C. § 1988 and LA. CIV. CODE ANN. art. 2315.2 (Count 1),[5] as well as in a survival action pursuant to 28 U.S.C. § 1988 and LA. CIV. CODE ANN. art. 2315.1 (Count 2). *Id.* at 8. The Hendersons further allege that Defendants violated Dawkins' civil rights, in violation of the Civil Rights Act, 42 U.S.C. § 1983 (Count 3). *Id.* at pp. 8-9.

### B. The Court's Order Regarding the Hendersons' Interrogatory Requests

On June 12, 2012, the Court issued an Order granting the Hendersons' Motion to Compel in part and denying it in part. (R. Doc. 105).

As to Turner, the Court found that the *in camera* review of the personnel files revealed limited documents that were relevant to the claims or defenses of the parties; these limited documents included those related to training courses taken and/or facilitated by Turner, including training course on "use of force" and "safety" - specifically, his "DPS&C Corrections Services Capped Training - Employee Transcript[s]" for the years 1996 through 2004. *Id.* at 7-8. The Court ordered those documents to be produced to the Hendersons. The Court's Order required Defendants to produce Turner's "DPS&C Corrections Services Capped Training-Employee Transcript[s]" for the years 1996 through 2004 no later than ten (10) days from the date of this order. *Id* at 10.

As to Covington, who the Hendersons accuse of disregarding Dawkins' health, the Court found that after reviewing Covington's files *in camera*, it could not find any documents relevant to the Hendersons' claims that they might be relevant to show Covington's history of other similar instances where these same guards showed a callous indifference to the serious medical needs of an inmate. *Id.* at 9-10. The Court's Order stated that the Henderson's request for Covington's

---

[5]The "Counts" are not numbered or named as "Counts" in the Hendersons' Amended Complaint. However, the Court here designates them as such for the sake of simplicity.

3

personnel file documents was denied. *Id.*[6]

### D. The Hendersons' Motion to Reconsider

On June 18, 2012, the Hendersons filed the instant motion, which is unopposed.[7] In their motion, they request that the Court reconsider its prior decision pursuant to 28 U.S.C. § 636(a) as the prior decision was clearly erroneous or contrary to law. (R. Doc. 109, p. 1). The Hendersons argue that they will be offering testimony of several inmates for whom Defendants possess the entire Master Prison file to attach the credibility of the Plaintiffs' inmate witnesses. (R. Doc. 109-2, p. 2). The Hendersons further argue that although Officer Turner testified that he had been written up for at least one serious disciplinary matter and at least on complaint by a fellow employee for yelling, the Hendersons are not being allowed his entire personnel file. *Id.* The Hendersons further argue that it does not appear that the entire file was given to the Magistrate Judge for review. *Id.* at 1-2. The Hendersons further argue that the Magistrate Judge has not compelled production *in camera*, because the Magistrate found that there was little to call to question the credibility of Officers Turner or Covington or to challenge the testimony given either at deposition or as indicated by the circumstances. *Id.* at 2. However, the Hendersons argue that credibility is an issue at trial. *Id.*

The Hendersons further argue that Defendants produced the "entire personnel file," but instead disciplinary portions of the guards' files were not produced for *in camera* review. They

---

[6]The Court further ordered that Defendants shall pick up the personnel documents submitted to the Court for *in camera* review no later than ten (10) days from the date of this order. If Defendants fail to pick up the documents or contact the Court by the deadline, the Court will shred the documents. *Id.* This ruling has gone unchallenged.

[7]As noted above, the instant motion to reconsider is unopposed, although the underlying Motion to Compel was opposed. (R. Docs. 39, 52). In support of their opposition to the underlying motion, Defendants argued that the personnel files were irrelevant and contained impermissible character evidence. (R. Doc. 39, pp. 1-2). In a subsequent opposition, Defendants argued that Turner and Covington had a very high privacy right to their personnel files, given that both worked in the prison system and exposure of their personal information, which includes information regarding their families, could occur to persons who had already been adjudicated guilty of crimes and might harbor personal animus to either Turner, Covington, or both. (R .Doc. 52, p. 3).

further argue that "personnel file" is a very broad term that encompasses all of the personal files of the employee. *Id.*

## II. **Standard of Review**

No Federal Rule of Civil Procedure ("Rule") "provide[s] for a 'Motion for Reconsideration' but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment." *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Fifth Circuit courts have adjudicated motions to reconsider which are filed within 10 days of the Court's Order under Federal Rule of Civil Procedure ("Rule") 59(e). *Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *aborgated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 & n.14 (5th Cir. 1994); *Bass v. United States Dep't of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000). Because the Hendersons filed the instant motion to reconsider six days after the Court issued its Order in connection with the underlying motion, they are entitled to review under Rule 59(e).

Rule 59(e) states that "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." *Id.* Reconsideration of judgments under Rule 59(e) is an extraordinary remedy, which should be used sparingly. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479-480 (5th Cir. 2004). "Because [59(e)] motions are disfavored, a movant of a . . . motion to reconsider must show . . . the need to correct a clear error of law or prevent manifest injustice." *Wanzer v. Pfeil*, 2006 WL 2548503, at *2 (W.D. Tex. Aug. 8, 2006); *see Voisin v. Tetra Technologies, Inc.*, 2010 WL 3943522, at *3 (E.D. La. Oct. 6, 2010) (Roby, M.J.) (citing *Voisin*).

5

### III. <u>Analysis</u>

The Hendersons do not appear to limit their Motion to Reconsider to those documents which the Court in fact allowed production, but merely that the "entire" personnel file was not produced. (R. Doc. 109, pp. 2-3). To the extent that the Hendersons' Motion was not limited, it is denied on the grounds that it would be counterintuitive for the Hendersons to request reconsideration of any portion of the Court's Order which they actually prevailed on. Therefore, the Court limits this Motion for Reconsideration to those portions of the Court's Order to which the Hendersons have actually objected on grounds that they did not receive documents to which they claim entitlement.

#### A. <u>Failure to Review Entire Personnel File</u>

In support of their Motion, the Hendersons argue that the Court erred as a matter of law in failing to compel the entire personnel file for *in camera* review. (R. Doc. 109, p. 2). They argue that "[i]t does not appear [from] the *Order* that the Defendants produced the entire personnel file and instead they produced training certifications and other inane benefit materials. The disciplinary portions of the files were not produced for *in camera* review." *Id.* (emphasis added) The Hendersons take this position not because they *know* whether the documents were in fact produced, but because "[i]f the disciplinary portions were produced, there is no mention of it in the *Order*." *Id.* (emphasis in original).

The Hendersons' argument reflects a flawed reading of the plain language of the Court's Order. The Order states,"[t]he Court's *in camera* review of *the personnel files*. . . ." (R. Doc. 105, p. 10). This language does not indicate that only portions of the *files* (plural) were provided to the Court for review. The Court also indicated, in the course of its Order, which documents from the personnel *files* it deemed relevant to the Henderson's claims, and ordered them produced. While

the Court did not list every specific document it received and reviewed, the Hendersons cite no authority for the proposition that a Court must provide an inventory of *every* document it receives for inspection in an Order following an *in camera* review. Indeed, such a rule would controvert the purpose of an *in camera* review, which is designed in part to shield non-relevant, but potentially sensitive, documents from disclosure in the public record. *See Montee v. Imperial Palace of Mississippi*, 2006 WL 2042346, at *1 (S.D. Miss. July 20, 2006) (noting that "the Court's in camera review . . . served as a protection for [a party's] privacy interests.").

Indeed, blanket production would in fact contravene the requirements of Rule 26(b)(1), which allows discovery of evidence of information not privileged which is *relevant* to the claim or defense of any party. *Id.* To prevail on a motion to compel, a party must indicate how the evidence sought *relates* to the claim asserted. *See McCann v. Bay Ship Management Inc.*, 2000 WL 1838714, at *1 (E.D. La. Dec. 8, 2000) (Roby, M.J.) (declining to grant a motion to compel production or *in camera* review of a personnel file, where the movant failed to provide evidence of indicating a lack of credibility). The fact that all discovery must be "relevant" naturally circumscribes the extent of a party's entitlement to that information. *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (finding that in response of request for personnel files in Title VII case, "all or *some parts* of these personnel files could be central to the plaintiff's effort.") (emphasis added). Accordingly, Courts in the Eastern District of Louisiana routinely require production of only that part of a complete personnel file which, upon *in camera* review, the Court deems responsive to a party's claim. *See, e.g.*, *Cosgrove v. Greater New Orleans Expressway Commission*, 1998 WL 690969, at *1-*2 (E.D. La. Oct. 2, 1998) (Berrigan, J.) (finding on review that magistrate's ruling after *in camera* review of personnel file that only portions related to plaintiff's sexual harassment, discrimination and

retaliation claims should be released was not clearly erroneous); *Chauvin v. Lee*, 2000 WL 567006, at *2-*3 (E.D. La. May 8, 2000) (Wilkinson, M.J.) (citing *Coughlin*, and finding after *in camera* review of police officer's personnel file that certain types of information, such as documents relating to medical and annual leave, income taxes, weapons and uniform purchases, etc. were not relevant to civil rights claim); *Snyder v. United States*, 2003 WL 21088123, at *3 (E.D. La. May 12, 2003) (Roby, M.J.) (finding that information such as employee's application for employment, military history, and financial and salary information was not relevant to plaintiff's personal injury claim asserted against Postal Service driver).[8]

Here, the Hendersons clearly meet the relevancy standard, as they argue that evidence from Turner and Covington's personnel files will affect the credibility of the deposition testimony of the two guards. Accordingly, the Court reviewed the personnel files *in camera*, and then ordered those documents relevant to Henderson's claim produced. The plain language of the Court's order explains the scope of its review and the reasons for its decision. The Hendersons now merely speculate that the personnel files "must" contain information which the Court overlooked. Courts in similar circumstances have dismissed appeals taken after *in camera* review. *See, e.g.*, *Sanchez v. Yates*, 2011 WL 3102556, at *3 (C.D. Cal. June 20, 2011) (finding, in context of federal habeas relief case, that petitioner's claims that personnel files of two arresting officers "might" contain discoverable information even after *in camera* review of files was "speculative" and did not merit relief). Similarly, the Hendersons' claim that the personnel file "must" contain other relevant evidence is denied.

---

[8]Admittedly, *Snyder*, unlike the other cases cited herein, did explicitly state that "the defendant has certified that the file produced is the complete" personnel file. *Id.* However, the Court has found no rule or requirement which obligates a producing party to expressly certify that the file produced is in fact the "complete" file. Presumably, officers of the court who respond to a Court Order to produce documents will obey the directive of the Court.

B.      **Improper Use of Deposition Testimony**

The Hendersons also argue that the Court erred as a matter of law because the reason for non-production of the entire file "is that the Magistrate Judge found that there is little call to question the credibility of the Defendants or to challenge the testimony he gave in deposition." (R. Doc. 105, p. 2). In order words, the Hendersons argue that the Court first made a credibility determination based on the deposition testimony of Turner and Covington, and then decided that it did not need to see the entire personnel file. *Id.* The Hendersons argue that it was inappropriate for the Court to make credibility calls based on deposition testimony in rendering a decision on a motion to compel, when the purpose of the motion is to gather information to test credibility. *Id.*

The Court did in fact reference both Covington and Turner's deposition testimony in the course of its Order,[9] and the Hendersons correctly reiterate the judicial maxim that credibility determinations should not be made at the motions stage. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) (finding credibility determination improper in determination of summary judgment motion). However, the Hendersons' argument regarding the Court's *motive* for referencing this material is also premised upon an incorrect reading of the Court's Order. Simply because the Court referenced pertinent deposition testimony for purposes of illustrating the basis for both the Hendersons' *claims* and how those claims related to their specific *requests for production* does not does not mean that the Court made a *credibility* determination as to the trustworthiness of either Covington or Turner's testimony, or that on the basis of such a determination the Court

---

[9]The Order noted that, as to Turner, he had testified that "a lot" of inmate grievances had been filed against him in the previous five years, but that none of those grievances involved complaints of excessive force, nor had been investigated by the department of corrections or been subject to an internal affairs investigation. (R. Doc. 105, p. 7, citing (R. Doc. 52-1, pp. 8-9). The Order also noted that, as to Covington, he had testified that in the previous five years, inmates had filed grievances against him, but that he did not recall any of them using excessive force. (R. Doc. 105, p. 9 (citing R. Doc. 52-2, pp. 8-9). The Court notes that in its original Order, it had listed the citation to Covington's transcript as "R. Doc. 51-1," which is the document containing Turner's deposition.

decided that it did not need to review the personnel files in their entirety.

In sum, Henderson's arguments for reconsideration do not warrant the "extraordinary" remedy of Rule 59(e) relief, because the Court's Order was not clearly erroneous and enforcing it as written would not result in manifest injustice.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiffs, Latesha and Calvin Earl Henderson (the "Hendersons"),' **Plaintiffs' Motion Seeking Reconsideration of Magistrate Judge Ruling "Order" [105] (R. Doc. 109)**, is **DENIED**.

New Orleans, Louisiana, this 29th day of October 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**