| | | |
|---|---|---|
| LATESHA HENDERSON AND | * | CIVIL ACTION |
| CALVIN HENDERSON | * | |
| | * | NO. 11-39 |
| VERSUS | * | |
| | * | SECTION "C" (4) |
| MAJOR JOE TURNER AND | * | |
| SERGEANT BRIAN COVINGTON | * | |

## ORDER AND REASONS

Before the Court is defendant, Master Sergeant Bryan Covington's motion for summary judgment based on qualified immunity from plaintiffs' claims for excessive force/deliberate indifference. Rec. Doc. 140. Plaintiffs oppose this motion. Rec. Doc. 147. Having reviewed the record, memoranda of counsel, and the law, the motion is DENIED for the following reasons.

I.  BACKGROUND

The applicable facts have been set forth in detail in Rec. Doc. 74 and will not be restated here except as necessary. On September 29, 2010, Major Turner attempted to restrain Calvin Earl Dawkins and place him in administrative segregation to await disciplinary proceedings for allegedly profane remarks he made to a health aide. Rec. Doc. 74, p. 2. Mr. Dawkins had come to the infirmary to declare himself an emergency because he was suffering from chest pain. *Id.* Master Sergeant Bryan Covington (hereinafter "Sergeant Covington") was the guard in the infirmary to whom Mr. Dawkins handed paperwork stating his condition for Sergeant Covington

1

to hand to the nurse. *Id.*, p. 4.  The paperwork said that Mr. Dawkins was having "heart trouble, chest pains, swelling." *Id.*  Defendants assert that Sergeant Covington did not look at the paperwork but just gave it to the nurses. *Id.*  Plaintiffs claim that after Sergeant Covington received the paperwork, and hence should have known what Mr. Dawkins was suffering from, he joined Major Turner in "us[ing] force to violently slam Dawkins down to the ground on his chest and to cuff his arms behind his back." *Id.*, p. 3.  Plaintiffs further assert that when Major Turner and Sergeant Covington successfully handcuffed Mr. Dawkins and pulled him into a seated position, Mr. Dawkins showed no signs of life. *Id.*  Attempts to resuscitate Mr. Dawkins continued for thirty minutes, but by the time he arrived at Lane Memorial hospital, he experienced seizure activity and was placed on life support. *Id.*  Life support was discontinued on October 6, 2010, and Mr. Dawkins passed away. *Id.*

  II. SUMMARY JUDGMENT STANDARD

  Rule 56 of the Federal Rules of Civil Procedure states: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56.  When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *United States ex re. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 173 (5th Cir. 2004) (*citing Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).

2

Case 3:11-cv-00039-HGB-KWR   Document 167   02/05/13   Page 2 of 9

An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986)). A factual dispute precludes summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (*citing Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the nonmoving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

III. LAW AND ANALYSIS

A.  APPLICABLE LAW

Defendant claims he is entitled to qualified immunity from plaintiffs' claims for excessive force/deliberate indifference. Rec. Doc. 140, p. 1.  Qualified immunity operates to protect a public official who is performing a discretionary task. *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).  There is a two-step process to determine if a defendant is entitled to qualified immunity.  A Court must first determine if a federally protected right has been violated. *Scott v. Harris*, 550 U.S. 372, 377, 127 S.Ct. 1769, 1774 (2007) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  Secondly, if the Court finds a violation of a federally protected right, it must then inquire into whether the right was clearly established at time of the infraction. *Id.*  The Court uses an objective reasonableness standard–considering whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation at issue and not considering the officer's subjective intent. *Pearson v. Callahan*, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). The Court must view the facts in the light most favorable to the party asserting the injury. *Harris*, 550 U.S. at 377; *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001).

B. ANALYSIS

Defendants move for summary judgment because plaintiffs cannot prove that Sergeant Covington know of Dawkins' health problems. Rec. Doc. 140, p. 5. Defendants claim that after committing a rule violation by cursing at a dialysis nurse, Mr. Dawkins, "walked to the medical unit and declared himself a medical emergency (the procedure to see medical immediately rather

4

than waiting for an appointment) to talk to medical personnel about why he was getting dialysis two days in a row." Rec. Doc. 140, p. 5-6. Defendant claims: "[Dawkins] explained that he did not want dialysis again and made no other complaints." *Id.* p. 6. This initial statement presents an issue of material fact because plaintiffs have actually alleged that Mr. Dawkins declared himself an emergency not to complain about dialysis, but because he was suffering from chest pains. Rec. Doc. 74, p. 2.

      Defendant Covington's motion gives an account of what happened during the incident and then states: "The testimony confirms that he [presumably Mr. Dawkins] was in no distress and was the aggressor." Rec. Doc. 140, p. 6. However, at the point that statement is made, the motion cites to no testimony other than its own account of the facts during the incident in question and its allegations that Mr. Dawkins was being combative. *Id.* In attempting to demonstrate that a significant amount of time had passed since Mr. Dawkins arrived in the infirmary, so that "any condition he may have had was not obvious," the motion points to testimony that states fifteen to twenty minutes had passed between the time Mr. Dawkins allegedly cursed at the nurse and the incident in the infirmary. *Id.* at p. 7. Finally, without any argument or explanation, the motion also quotes five other pages of testimony from Sergeant Covington, Nurse Grady, Practical Nurse Baggett, Practical Nurse Williams, Sergeant Cambre and Major Turner. *Id.* p. 7-13. The motion does not state what this testimony is supposed to elicit; it only states the fragment: "As can be seen from the deposition of the only parties

5

present." But, defendant appears to be using the testimony to support arguments that Mr. Dawkins was not in distress, his condition was not obvious, or that he was being unruly.

Plaintiffs have claimed that Mr. Dawkins' Eight Amendment rights were violated when guards used excessive and unnecessary force upon him and interfered with Mr. Dawkins' attempts to receive emergency medical treatment for chest pains. Rec. Doc. 147, p. 1. Plaintiffs assert that considering Mr. Dawkins' medical condition, any use of force was unnecessary and excessive because Mr. Dawkins created no security risk. *Id.*, p. 7. Unnecessary and wanton infliction of pain constitutes cruel and unusual punishment in violation of the Eight Amendment, made applicable to the States by the fourteenth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The question of what is necessary to meet the threshold of "unnecessary and wanton infliction of pain" varies according to the alleged constitutional violation. *Id.* The Court must look at whether the force was used in good faith to maintain order or for the purpose of causing harm. *Id.* at 1085. Here, plaintiffs allege that defendants used force to cause harm when it was unnecessary to subdue Mr. Dawkins.

Plaintiffs claim defendants exhibited "deliberate indifference" to Mr. Dawkins' medical needs, which constitutes "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). This deliberate indifference can be indifference from prison guards in intentionally denying or delaying access to medical care. *Id.* at 104. Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Id.* at 105. The guard's acts or omissions must be sufficiently harmful to

6

evidence deliberate indifference which offends "evolving standards of decency". *Id.* at 106. In the present case, plaintiffs have shown that a constitutional right would have been violated on the facts alleged. *Katz*, 533 U.S. at 200.

Next, plaintiffs must show that the right was clearly established at the time of the infraction. *Id.* The inquiry must be undertaken in the context of the case. *Id.* at p. 201. Here, the right is established because a reasonable official would have known that action taken against a man declaring himself an emergency or complaining of chest pain would violate his clearly established 8th Amendment rights. *Id.* at 202 (*citing Anderson*, 483 U.S. at 640, 107 S.Ct. 3034); *Smith v. Reynard*, 89 F.Supp.2d 784, 787 (W.D. La. 2000) (finding plaintiff had a claim for violation of 8th Amendment rights based on deliberate indifference when nurse ignored plaintiff's declaration of medical emergency and complaint of chest pain). Sergeant Covington may or may not have been aware of plaintiffs complaints for chest pain, but regardless, he should have been on notice that putting an inmate who had declared himself an emergency on the ground could violated his Constitutional rights.

Sergeant Covington is claiming he did not know about Mr. Dawkins' health problems when he engaged with Major Turner in subduing Mr. Dawkins. Rec. Doc. Plaintiffs claim that Sergeant Bryan Covington joined Major Turner in using "excessive force on Mr. Dawkins by tripping him and bringing him down to the ground to be put in restraints," and that he did this with knowledge of Mr. Dawkins' condition. Rec. Doc. 147, p. 3. In Sergeant Covington's deposition, he states that Mr. Dawkins told him he was declaring himself an emergency when

7

Mr. Dawkins came to the front desk of the infirmary where working. Rec. Doc. 140, Demo. Covington, p. 20. In Sergeant Covington's deposition, he explained that he handed the nurses Mr. Dawkins' declaration of emergency where he had written down why he was declaring himself an emergency. *Id.* p. 23. He responded to questioning about whether he read it by saying, "I don't remember exactly what it had said. I was in a hurry that day. . . . I just took the paper and gave it to medical." *Id.* Whether or not Sergeant Covington was aware of Mr. Dawkins' health problems is a question for the jury. *See* Rec. Doc. 152, p.3. (where defendant claims he was not aware of chest pains). However, it does not determine whether summary judgment should be granted because the appropriate inquiry in a case for qualified immunity is not to the subjective intent of the officer, but rather whether a reasonable officer would have known whether someone who came to the infirmary to declare himself a medical emergency would have had his rights violated if he used excessive force to bring him to the ground and restrain him. *Pearson*, 129 S.Ct. at 818. Here, the Court finds that a reasonable officer could have been aware that an inmate suffering from chest pain would have his rights violated if faced with the type of force Sergeant Covington used against him. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412 (1977) (*citing Estelle v. Gamble*, 429 U.S. at 103) (showing excessive force requires inmate show unnecessary and wanton infliction of pain). The jury must determine whether Sergeant Covington used appropriate force in good faith to subdue Mr. Dawkins or used force for the purpose of causing harm. *Whitley v. Albers*, 475 U.S. at 321.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED. Rec. Doc. 140.

New Orleans, Louisiana this 30th day of January, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

9